IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RACHEL RITKE, | |
| Plaintiff, | 7:22-CV-5002 |
| vs. | MEMORANDUM AND ORDER |
| JENNIFER BURGESS, individually, | |
| Defendant. | |

The plaintiff, Rachel Ritke, sued the defendant, Jennifer Burgess, under 42 U.S.C. § 1983 for alleged violations of the plaintiff's Fourteenth Amendment substantive due process rights. Filing 5 at 28, 31. This matter comes before the Court on Burgess' motion for summary judgment. Filing 72. The motion will be denied.

I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to

those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

Properly referenced material facts in either party's statement of facts are considered admitted for the purposes of summary judgment unless controverted in the opposing party's response. NECivR 56.1(b)(1)(B) and (c). Arguments regarding the relevance or materiality of an asserted fact are not a proper basis for disputing that fact. *Id*.

## II. BACKGROUND

The plaintiff's claims against Burgess stem from a series of events which began on April 20, 2018. At that time, the plaintiff was a minor child who lived in Potter, Nebraska. Filing 73 at 2. The plaintiff's mother was missing, her father lived in Colorado, and she had no other guardian. *Id*; filing 80 at 5. After law enforcement executed a search warrant on the plaintiff's home around 11 a.m., the Nebraska Department of Health and Human Services (DHHS) assumed temporary custody of the plaintiff. Filing 80 at 3; filing 80-2 at 1.

Burgess was the DHHS employee responsible for placing the plaintiff with a temporary guardian. Filing 73 at 2; filing 80-2 at 1.

The plaintiff, by her account, told Burgess she could stay with a friend of hers who was the daughter of Craig Schuessler. Filing 80 at 5. But the plaintiff did not want to be alone with Schuessler, and said she would prefer to be placed with her father or with a neighbor who she knew well. Filing 80 at 5. But for reasons that aren't clear from the record, placement with her father or neighbor were unacceptable—so, Burgess told the plaintiff no, and decided to place her with Schuessler. *Id.* Burgess ran a background check on Schuessler and searched his name in the DHHS database to identify previous contacts between him and the department. *Id.* Schuessler's previous contacts with DHHS included allegations that he drank beer while driving with two young children, that his daughter reported he had an alcohol problem, that he physically neglected his daughter, and that his daughter reported he was a "raging alcoholic" and "is very demeaning." *Id.* at 4-5.

Burgess interviewed Schuessler anyway to ask if he would temporarily take in the plaintiff. Filing 73 at 2. This was around 5 p.m. Filing 80 at 5. Schuessler was visibly intoxicated: he had difficulty forming sentences, he knocked things off the table, and he was falling out of the chair he was sitting in. Filing 80 at 7. In the interview, Schuessler made sexual advances towards Burgess, and he referred to his daughters as "cleaning bitches." Filing 73 at 2.

Burgess left the plaintiff with Schuessler. But immediately after Burgess left, she called her supervisor and admitted that she was "really worried" about Schuessler's intoxication. Filing 80 at 10. Generally, the DHHS doesn't consider people with known alcohol abuse problems, or who are highly intoxicated, qualified to be foster parents. *Id.* The supervisor immediately told Burgess to get help from law enforcement and remove the plaintiff from

3

Schuessler's home. *Id.* Burgess eventually did so—after several hours. *Id.* The record doesn't explain why it took so long.

And meanwhile, before Burgess returned, Schuessler had turned his attention to the plaintiff: He made sexual advances towards her and, after she ignored him, he physically assaulted her. Filing 90 at 9. The plaintiff was forced to lock herself in a bedroom in Schuessler's house to keep away from him. The plaintiff alleges she suffered extreme emotional distress after Burgess placed her with Schuessler, including post-traumatic stress disorder, anorexia nervosa, amenorrhea, anxiety, and depression. Filing 5 at 35. She alleges Burgess' actions in April 2018 amounted to a deliberate indifference toward her constitutional right to be kept reasonably safe from harm while in foster care. Filing 5 at 32.

## III. DISCUSSION

Burgess argues that the plaintiff has not established a violation of a constitutional or statutory right, so the plaintiff's claim must fail as a matter of law *and* Burgess is entitled to qualified immunity. *See* filing 73. Qualified immunity shields state employees performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful. *Laney v. City of St. Louis*,

56 F.4th 1153, 1156 (8th Cir. 2023); *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980.

*Clearly Established Right*

The Eighth Circuit has determined that minor children placed in foster care have a clearly established constitutional right to adequate medical care, protection, and supervision. *Norfleet v. Ark. Dept. of Hum. Servs.*, 989 F.2d 289, 293 (8th Cir. 1993) ("[I]t was clearly established in 1991 that the state had an obligation to provide adequate medical care, protection and supervision" to a child in foster care); *accord James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006); *Burton v. Richmond (Burton I)*, 276 F.3d 973, 978-79 (8th Cir. 2002).[1] A minor child's substantive due process rights have been violated if the state "actively participate[s]" in creating a dangerous environment. *Burton I*, 276 F.3d at 978; *accord Burton v. Richmond (Burton II)*, 370 F.3d 723, 728 (8th Cir. 2004); *DeShaney v. Winnebago Cnty Dept. of Soc. Servs.*, 489 U.S. 189, 198, 201 n.9 (1989).

In these contexts, "a substantive due process violation will be found to have occurred only if the official conduct or inaction is so egregious or outrageous that it is conscience-shocking." *James*, 458 F.3d at 730 (citing *Burton II*, 370 F.3d at 729). Conduct "will not be found to be conscience-

---

[1] The Court recognizes its obligation to frame a clearly established right for the purposes of qualified immunity not with "general statements of the law," but with contours "sufficiently definite that any reasonable official in the defendant's shoes would have understood that [s]he was violating it." *McDaniel v. Neal*, 44 F.4th 1085, 1091 (8th Cir. 2022) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). But, per the foregoing, the Eighth Circuit has repeatedly emphasized that the clearly established right in cases like these is the substantive due process right to adequate medical care, protection, and supervision while in the state's custody.

shocking unless the officials acted with deliberate indifference." *Id.* The deliberate indifference standard applied in a substantive due process case is the same as that applied in Eighth Amendment[2] cases: "the official must both

---

[2] It's strange to apply an Eighth Amendment standard to cases involving state custody of minor children who are victims of circumstance and have done nothing wrong. *See James,* 458 F.3d at 728; *Burton I,* 276 F.3d at 974. For involuntarily committed patients, liability attaches to state actors who fail to exercise their professional judgment because the involuntarily committed "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo,* 457 U.S. 307, 322 (1982). The Tenth Circuit reasoned that children in the foster system were more analogous to involuntarily committed patients than prison inmates, so the *Youngberg* "professional judgment" standard applied. *Yvonne L. v. N.M. Dept. of Hum. Servs.,* 959 F.2d 883, 893-94 (10th Cir. 1992); *see also Burton I,* 276 F.3d at 979 (comparing a minor child in a foster home to the claimant in *Youngberg*).

But the "deliberate indifference" standard has prevailed in the foster care setting, for the most part. *See M.D. v. Abbott,* 907 F.3d 237, 251 n.22 (5th Cir. 2018) (collecting cases); *Doe v. S.C. Dept. of Soc. Servs.,* 597 F.3d 163, 176 (4th Cir. 2010); *Tamas v. Dep't of Soc. & Health Servs.,* 630 F.3d 833, 844 (9th Cir. 2010); *Taylor v. Ledbetter,* 818 F.2d 791, 794 (11th Cir. 1987); *Yvonne L.,* 959 F.2d at 894 ("As applied to a foster care setting we doubt there is much difference" between the deliberate indifference and professional judgment standards); *but see Waubanascum v. Shawano Cnty.,* 416 F.3d 658, 666-67 (7th Cir. 2005) ("In the foster care context, we apply a 'modified' deliberate indifference standard. Under this standard, the state must have actual knowledge or suspicion of the risk of harm the child may suffer while in foster care."); *Moore v. Lake Cnty Dept. of Job and Fam. Servs.,* 364 F. App'x 194, 196 (6th Cir. 2010) (deliberate indifference is the controlling standard, but the panel made "no determination as to which standard is a more appropriate one to apply in determining whether a child's right to be free from harm while in state foster care is violated"). The parties do not dispute that the deliberate indifference standard applies; this Court is simply identifying dissonance between an Eighth Amendment context and the present circumstances, should the Eighth Circuit wish to consider it.

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Est. of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015) (quoting *Moore v. Briggs*, 381 F.3d 771, 773-74 (8th Cir. 2004)). The official need not believe that serious harm will actually happen; it is sufficient that the official knows of a substantial risk that a person may suffer serious harm. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

*Deliberate Indifference*

Burgess argues that she "was not aware of facts that a substantial risk of serious harm existed." Filing 73 at 9. "The question of whether the official knew of the substantial risk is a factual one 'subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010) (quoting *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2008) (quoting *Farmer*, 511 U.S. at 842)). A plaintiff must have evidence regarding a state official's subjective beliefs, or else the plaintiff's claim fails. *See McLean v. Gordon,* 548 F.3d 613, 616 (8th Cir. 2008) (no evidence available to social workers that firearms were unsecured or accessible to children); *James,* 458 F.3d at 730 (no evidence of social workers' subjective beliefs); *Gregory v. City of Rogers, Ark.,* 974 F.2d 1006, 1010 (8th Cir. 1992) (plaintiff had no evidence that police knew that a person they permitted to drive a car was intoxicated).

The plaintiff has met her burden here. Drawing all inferences in favor of the non-moving party, Burgess was aware of facts that support an inference that Schuessler was a risk to the plaintiff due to his intoxication and prior bad behavior. Burgess ran a background check on Schuessler (filing 80 at 4-5, filing 74-2 at 7), and Schuessler was obviously drunk during the pre-placement

7

interview and he made sexual advances towards Burgess (filing 73 at 3; filing 80 at 7). These facts support an inference that Schuessler was a risk to the plaintiff's safety. While Burgess disputes that she was aware of Schuessler's history, *see* filing 82 at 3, the plaintiff has presented evidence that could lead a reasonable trier of fact to find that Burgess knew the information in the background check she ran. *See* filing 74-2 at 27. And, the plaintiff has evidence that Burgess subjectively drew an inference that Schuessler posed a risk to the plaintiff, because Burgess called her supervisor *immediately* after leaving the plaintiff in Schuessler's custody and said she was worried about Schuessler's intoxication. Filing 80 at 10; filing 80-3 at 46.

Burgess asserts that there was no way she could have known that the plaintiff was at a risk of sexual harassment or assault just because Schuessler was intoxicated. *See* filing 73 at 9-11. Under the deliberate indifference standard, a state actor is not liable under § 1983 for "surprise attacks" of inmates; *i.e.*, where the state actor had no reason to believe that a particular inmate was in special danger or that a particular inmate was especially violent. *E.g., Vandevender v. Sass*, 970 F.3d 972, 976-77 (8th Cir. 2020). A state actor cannot be deliberately indifferent to an unknowable risk of harm. However, a plaintiff "is *not* required to allege and prove that the defendant . . . specifically knew about or anticipated the precise source of the harm." *Nelson*, 603 F.3d at 447 (quoting *Kahle*, 477 F.3d at 551) (emphasis in original); *see also Krein v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002).

Hypothetically, if Schuessler secretly had a pet boa constrictor, and the plaintiff was attacked by the snake, Burgess is correct that such an event would have been a "surprise attack" unknowable and unforeseeable to her. According to Burgess, Schuessler's sexual assault was an unforeseeable surprise attack, like an unknown pet snake. *See* filing 73 at 11. But the Court

8

is not convinced. When Burgess told her supervisor that she left a minor child in the custody of a severely intoxicated man, her supervisor told Burgess to remove the plaintiff from the home with the assistance of law enforcement. Filing 80 at 10; filing 80-3 at 47. Burgess told her supervisor she was concerned with Schuessler's intoxication—what exactly was she concerned *about*, if not the plaintiff's physical safety and emotional well-being?

Drawing all inferences in favor of the non-moving party, Schuessler's actions cannot be characterized as a "surprise attack," and Schuessler's risk to the plaintiff's physical and emotional safety was knowable to Burgess based on Schuessler's past behavior, his behavior during the interview with Burgess, his extreme intoxication, and the general rule that DHHS does not allow individuals with alcohol abuse or individuals who are highly intoxicated to be foster parents. Just because Schuessler's assault was sexual does not mean that Burgess could not have foreseen the substantial risk of danger to the plaintiff's safety.

Burgess' alleged deliberate indifference is conscience-shocking. *See James*, 458 F.3d at 730 (conduct "will not be found to be conscience-shocking unless the officials acted with deliberate indifference"). Specifically, Burgess is alleged to have left a vulnerable 17-year-old girl in the custody of the severely intoxicated and sexually aggressive Craig Schuessler, and Burgess subjectively knew that that he posed a substantial risk of serious harm to the girl's physical safety and emotional well-being. Burgess is alleged to have needed the assistance of law enforcement to remove the girl from Schuessler's custody. And the plaintiff has provided sufficient evidence to support these allegations. Burgess' disregard of her official duties and the act of putting a vulnerable child in the arms of a drunken sex pest indicate that Burgess' actions rise well above negligence, and clearly point toward liability, thereby

9

shocking this Court's conscience. *See Moore*, 381 F.3d at 773 (quoting *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)); *Burton I*, 276 F.3d at 980.

There remain several disputed material facts, and Burgess is not entitled to immunity based on the plaintiff's evidence. Burgess actively placed the plaintiff in a worse situation than she would have otherwise faced. *Cf. Burton II*, 370 F.3d at 728; filing 80 at 4. While Burgess claims that she wasn't subjectively concerned about the plaintiff's physical safety, *see* filing 73 at 4, Burgess' credibility, and the credibility of the other witnesses, must be weighed by the trier of fact. A jury may believe Burgess, or it may not. The plaintiff has sufficient evidence to submit to a jury the question of whether Burgess was deliberately indifferent: whether she was aware of facts to support an inference that Schuessler posed a substantial risk of serious harm to the plaintiff's physical safety and emotional well-being, and whether Burgess actually drew that inference. *See Kahle*, 477 F.3d at 552.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment will be denied. This case will proceed to trial, currently set to begin on April 29, 2024, in North Platte. The pretrial conference is set for April 2. But the parties are advised that the Clerk of the Court requires about six weeks of advance notice to assemble a jury pool in North Platte—and the Court is reluctant to begin that process without knowing whether the parties are committed to that trial date. In particular, the Court is aware of the possibility that the defendant could pursue an interlocutory appeal, *see Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010), and would appreciate some clarity from the parties about whether that (among other things) could result in continuing the trial date. Accordingly, the parties are directed to contact the Magistrate Judge's chambers at their earliest possible convenience to set a

scheduling conference, at which the parties should be prepared to discuss their commitment to the April 2 pretrial conference and April 29 trial date.

IT IS ORDERED:

1. The defendant's motion for summary judgment (filing 72) is denied.

2. The parties are directed to promptly contact the Magistrate Judge's chambers to set a scheduling conference.

Dated this 11th day of March, 2024.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Senior United States District Judge